FILED
02 SEP 16 AM 11: (
D. OF ALABAM,

**United States District Court**
**Northern District of Alabama**
**Eastern Division**

| | |
|---|---|
| **Mike Braxton,** | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV01-N-03174-E |
| | ] |
| **Farmer's Insurance Group,** | ] |
| | ] |
| Defendant(s). | ] |

ENTERED
SEP 1 6 2002

**Memorandum of Opinion**

## I.   Introduction.

Before the court is the plaintiff's motion for class certification, filed June 27, 2002. [Doc. # 16.] The issues raised therein have been fully briefed by both parties and are now ripe for determination. Upon due consideration, the court finds that the motion is due to be granted.

## II.   Facts.

Mike W. Braxton ("Braxton") held a policy of homeowners' insurance issued by the defendant, Fire Insurance Exchange ("FIE"). On October 16, 2001, FIE began using Insurance Bureau Codes ("IBCs") as one factor in setting the amounts of homeowners' renewal premiums. The IBCs are generated for FIE by Fair Issac, Inc. ("Fair Issac") based on information contained in credit reports Fair Issac obtains from TransUnion, a credit reporting agency. On November 1, 2001, in response to a request to do so by the Alabama

1

Insurance Department, FIE sent Braxton a letter regarding the renewal of his policy. The letter stated that due to "severe storm losses in Alabama and increasing costs of construction," Braxton's homeowners' insurance renewal notice, which would be mailed to Braxton "shortly" would "reflect a renewal premium which is at least 50% higher than [Braxton's] current premium." [Doc. # 31, Exhibit 2.] Thereafter, on November 18, 2001, said renewal notice was mailed to Braxton, who does not recall receiving that mailing. Included in the renewal notice was a Fair Credit Reporting Act ("FCRA") notice. *See* 15 U.S.C. §§ 1681, 1681a-1681t. In November or early December of 2001, Braxton "'suspected' defendant had accessed his credit report in setting his renewal premium based on receipt of the November 1, 2001 letter," receipt of his auto renewal, which included an FCRA notice, and receipt of his homeowners' insurance bill. [Doc. # 21, Def.'s Opp'n, at 5.]

Braxton filed an action in this court on December 10, 2001, alleging that FIE negligently and/or wilfully failed to comply with the notice requirements of FCRA when it raised his homeowners' insurance premium in partial reliance on information contained in his consumer credit report. [Doc. # 1, Compl.; Doc # 15, Second Am. Compl.] Braxton prayed for the following with respect to his claim under the FCRA: "[p]ast, present and future lost out-of-pocket expenses," "[p]ast, present and future mental anguish, embarrassment, frustration, humiliation and emotional distress," "[p]unitive damages, statutory damages, attorneys' fees, costs incurred and court costs," and "[a]ny and all other damages which are reasonable, premises considered." [Doc. # 15, Second Am. Compl., ¶ 12.] Further, Braxton prayed that the court would certify a class of similarly situated policy holders and award "compensatory and punitive damages" to the class. [Doc. # 15, Second

Am. Compl., ¶ 21.] Having engaged in discovery pertaining to the class certification issue, Braxton filed his motion for class certification on June 27, 2002. [Doc. # 16.] Braxton seeks certification of a Rule 23(b)(3) class of individuals identified as:

> All persons who were residents of Alabama from a period beginning October 16, 2001 to the present who were subjected to an adverse action with regards [sic] to the renewal of a policy of homeowner's [sic] insurance issued by Defendant based in whole or in part on information contained in their consumer credit report without a contemporaneous notice in compliance with 15 USC [sic] § 1681m(a).

[Doc. # 19, Amendment to Mot. for Class Certification.] In his motion for class certification, Braxton asserted that the defendant should be liable to the members of the putative class "for $1,000 statutory damages, actual damages, and attorneys [sic] fees." [Doc. # 17, Pl.'s Submission in Support of Mot. for Class Certification, at 4.] In response to Braxton's motion, FIE argued that (1) Braxton does not have standing to pursue an FCRA claim on behalf of himself or any members of the class, (2) the commonality and predominance requirements for certification have not been met, (3) Braxton cannot satisfy the typicality and adequacy requirements for certification, and (4) a class action is not a superior method of adjudicating FCRA claims. [Doc. # 21, Def.'s Opp'n.] In his reply submission, Braxton stated that as class representative, he would seek "between $100 and $1,000 per class member" in statutory damages (rather than actual damages). [Doc. # 31, Pl.'s Reply, at 13.] FIE filed a brief response to Braxton's Reply Submission on September 5, 2002. [Doc. # 39.] After a brief consideration of the applicable substantive law (the FCRA), the court will address each of the requirements for class certification in turn.

### III. Discussion.

### A. The Fair Credit Reporting Act.

Braxton's claim is based on FIE's alleged negligent and/or willful failure to comply with 15 U.S.C. § 1681m(a). That section requires any person who "takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report" to provide a notice to the consumer containing certain information. 15 U.S.C. § 1681m(a). Adverse action is defined by the statute, as, *inter alia*, "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance." *Id.* § 1681a(k)(1)(B)(i). Upon taking an adverse action based on information contained in a consumer report, the "user" of the report must:

> (1) provide oral, written, or electronic notice of the adverse action to the consumer; (2) provide to the consumer orally, in writing, or electronically – (A) the name, address, and telephone number of the consumer reporting agency . . . that furnished the report to the person; and (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and (3) provide to the consumer an oral, written, or electronic notice of the consumer's right – (A) to obtain . . . a free copy of the consumer report on the consumer from the consumer reporting agency referred to in paragraph (2) . . . ; and (B) to dispute . . . with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

*Id.* "The purpose of the notification provision is to enable the subject of a consumer report to request disclosure from the reporting agency of the nature and scope of the information

4

in his file." *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 149 (5th Cir. 1983). Notably, the statute does not specify precisely when the user of the information must provide the required notice to the consumer. *But see Carroll v. Exxon Co., U.S.A.*, 434 F. Supp. 557, 560 & n.5 (E.D. La. 1977) (the user must make the disclosure contemporaneously with notification of the adverse action); Conf. Rep. No. 91-1587 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4411, 4416 ("The [pertinent section of the FCRA] requires the user of the report to convey [the notice required by section 1681m] to the consumer *immediately* upon denial of credit, insurance, or employment.") (emphasis added); 16 C.F.R. § 601 App. C ("Users must notify consumers *when adverse actions are taken*") (emphasis added).

To enforce its requirements, the FCRA allows a consumer to pursue a right of action against "[a]ny person who . . . fails to comply with any requirement imposed under [the FCRA] with respect to any consumer." 15 U.S.C. § 1681n(a). One who willfully fails to comply with the FCRA is liable to the consumer for "any actual damages sustained by the consumer as a result of the failure," *or* statutory damages of between $100 and $1,000; punitive damages; and attorney's fees and costs. *Id.* "Any person who is negligent in failing to comply" with the FCRA is liable to the consumer for "any actual damages sustained by the consumer as a result of the failure" and attorney's fees and costs. 15 U.S.C. § 1681o. An award of actual damages under the FCRA may be premised on "either out-of-pocket losses, or . . . humiliation or mental distress, or both." *Riley v. Equifax Credit Info. Servs.*, 194 F. Supp. 2d 1239, 1244 (S.D. Ala. 2002). *See also Thomas v. Gulf Coast Credit Servs., Inc.*, No. Civ.A.01-D-1313-S, 2002 WL 1813463, at * 5 (M.D. Ala. July 22, 2002)

5

("Plaintiff may proceed upon showing that [the defendant] caused her to suffer emotional damages.").

At this stage in the proceedings, Braxton alleges that FIE willfully and/or negligently failed to comply with the FCRA's notice requirement and seeks statutory damages, punitive damages, attorney's fees, and costs on behalf of the class for willful non-compliance, or actual damages and/or attorney's fees and costs for negligent non-compliance. It is upon this backdrop that the class certification issue will now be considered.

**B.     Class Certification.**

This court has broad discretion in deciding whether or not to grant class certification. *See Wash. v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). In making this determination, the court may not consider whether the plaintiff will prevail on the merits, but can consider the merits of the plaintiff's claims to the extent that they impact on the question of class certification. *See id.* at 1570 n.11. *See also Miller v. Mackey Int'l Inc.*, 452 F.2d 424, 427 (5th Cir. 1971) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 58 (2d Cir. 2000) ("[A] motion for class certification is not an occasion for examination of the merits of the case.") (citation omitted); *Heimmermann v. First Union Mortgage Corp.*, 188 F.R.D. 403, 405 (N.D. Ala. 1999) ("Courts . . . can not venture outside the realm of Rule 23 to consider the merits of the underlying action.") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). At this stage, the plaintiff bears the burden of demonstrating that class certification is appropriate by

6

establishing that all of the requirements of Federal Rule of Civil Procedure 23(a) and one of the requirements of Rule 23(b) have been met. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). Each of the requirements will be considered in turn.

1. **Rule 23(a).**

    Rule 23(a) states:

    > One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Before examining these requirements in detail, the court "must determine that at least one named class representative has Article III standing to raise each subclaim." *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001) (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). In order to establish that he has standing, Braxton must show that (1) he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent;" (2) "the injury is fairly traceable to the challenged action of the defendant;" and (3) "it is likely . . . that the injury will be redressed by a favorable decision." *Pittman v. Cole*, 267 F.3d 1269, 1282 (11th Cir. 2001).

FIE argues that Braxton does not have standing because "Braxton received notice, he suspected his credit report had been accessed, and was caused no actual damage as he bought replacement coverage at a cheaper premium." [Doc. # 21, Def.'s Opp'n, at 11.] However, this argument misapprehends the nature of Braxton's claim. Braxton does not contest that FIE sent the required disclosures on November 18, 2001. [Doc. # 21, Def.'s

7

Opp'n, at 4 ¶ 8; Doc. # 31, Pl.'s Resp. to Def.'s Statement of Facts ¶ 8.] Rather, Braxton contends that the FCRA notice was sent too late to comply with the Act. He contends that the notice should have been sent with the initial letter notifying the policy holders of the increase in premiums (the November 1, 2001 letter). He claims that adverse action was taken based on information in his credit report and that FIE failed to provide timely notice in compliance with the FCRA. If FIE's failure to send the FCRA notice with the November 1, 2001, letter is found to be inconsistent with the requirements of the FCRA, then Braxton has sustained injury as contemplated by the Act. If the failure was willful, Braxton may be awarded statutory damages even absent a showing of actual damage. 15 U.S.C. § 1681n. If the failure was negligent, Braxton may be able to collect damages for his claimed emotional distress. 15 U.S.C. § 1681o. Thus, Braxton has standing to pursue his claim, as well as the claims of the class members, under the FCRA.

FIE also argues that the class should not be certified because the complaint and the pleadings at this stage do not state a claim under the FCRA. FIE argues that adverse action was not taken until it sent renewal notices reflecting higher premiums. Thus, FIE submits that as no adverse action had been taken prior to the November 1, 2001 letter, an FCRA notice was not required to be included with that letter, and no violation of the FCRA resulted. However, the court cannot, at this time, engage in such an analysis of the merits of the claims of the class members. See *Miller*, 452 F.2d at 427 ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits."). The question of whether an FCRA notice was required to be sent with the November 1, 2001, letter is a question concerning the merits of the case. FIE's arguments on the merits

8

of the case should be raised in a dispositive motion, not in response to a motion for class certification. Thus, the argument that the plaintiff has no claim, making class certification inappropriate, must fail.

**a.   Numerosity.**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be impracticable. Braxton has alleged that the class contains more than 5,000 individuals, and FIE admitted in discovery that it "took adverse action against 5,000 or more of [its] consumer customers [in Alabama] based in whole or in part on information obtained from a credit reporting agency." [Doc. # 17, Pl.'s Submission in Support of Mot. for Class Certification, Ex. A, at ¶ 16.] Furthermore, a representative of FIE, in his deposition, stated that letters such as the one sent to Braxton on November 1, 2001, were sent to all customers who were receiving a 50% or greater increase in their homeowners' insurance premium, which amounted to approximately 8,750 individuals. [Doc. # 17, Pl.'s Submission in Support of Mot. for Class Certification, Ex. B, Dep. of Jeff Withoft, at 59-60.] While there is no magic number of class members that will support certification, classes of more than forty members are generally deemed to satisfy the numerosity requirement. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Therefore, the court finds that the class is sufficiently numerous as to make joinder of all members impracticable.

**b.   Commonality.**

Rule 23(a)(2) requires that the class members allege common questions of law or fact. The burden of establishing commonality is not heavy and is generally met where the plaintiff alleges that the defendant has engaged in a course of conduct that affects all class

9

members and gives rise to the plaintiff's claims. *Dujanovic v. Mortgage Am., Inc.*, 185 F.R.D. 660, 667 (N.D. Ala. 1999). The nucleus of operative facts in this case is common to all members of the class: all class members were mailed letters similar to the one sent to Braxton on November 1, 2001, which alerted them to the increase in their premiums but did not include a notice in compliance with the FCRA. The question of law essential to a determination of this claim – whether adverse action had already been taken such that an FCRA notice should have been sent with those letters – is likewise common to all members of the class. Further, FIE's state of mind (willful, negligent, or neither) is a common issue of fact that is susceptible to class-wide proof. Therefore, the court finds that there are questions of law and fact common to all members of the class.

c.   **Typicality.**

Rule 23(a)(3) requires the named representative of the class to show that the claims and defenses of the representative party are typical of the claims and defenses of the class. This requirement is often considered to demand "no more than that there exists no antagonism between the claims of the class representative and [those of] the other members of the class." *Dujanovic*, 185 F.R.D. at 667. "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

FIE argues that Braxton fails to meet the typicality requirement "because Braxton received notice, suspected his credit had been accessed, and changed carriers at a premium savings." [Doc. # 21, Def.'s Opp'n, at 18.] However, as discussed *supra*, this

10

argument misapprehends the basis for Braxton's claim. Braxton's claim – that he was sent a letter informing him of a rate increase that did not contain an FCRA notice – is typical of those in the class he seeks to represent. The court finds that the typicality requirement has been met.

**d.     Adequacy of representation.**

Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class. An analysis of this requirement involves a two-part inquiry: whether class counsel is qualified to handle the litigation, and whether the class representative will vigorously prosecute the interests of the class. See Dujanovic, 185 F.R.D. at 668. Braxton alleges that class counsel is experienced and "has been successfully involved in class action litigation where the class was [sic] approximately 600,000 members." [Doc. # 31, Pl.'s Reply, at 14.] FIE's argument that class counsel is inadequate turns on an alleged conflict of interest between Braxton and class members whose actual damages might exceed the $1,000 statutory damages limit. As to these hypothetical class members, FIE argues that an election of statutory damages rather than actual damages might not be in their best interest. This argument speaks to the adequacy of the class representative, not the adequacy of counsel. The court has no reason to question the ability of class counsel to represent the class in this matter.

As for whether Braxton is an adequate representative, FIE argues that the class, as defined in Braxton's pleadings, contains individuals who benefitted by having their renewal premiums lowered based on information contained in their credit reports; thus Braxton cannot adequately represent all members of the class. However, this argument

11

misconstrues the definition of the class. The class includes only those individuals who were subjected to adverse action. Adverse action is defined in the FCRA as "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of any insurance." 15 U.S.C. § 1681a(k)(1)(B)(i). Thus, policy holders whose premiums were lowered were not subjected to adverse action and are not within the class as defined by Braxton. Furthermore, Braxton's submissions to this court indicate that the class is actually somewhat narrower than the definition implies: "the class is comprised of everyone living in Alabama to whom the defendant sent a letter such as the one sent to plaintiff [the November 1, 2001, letter], which did not contain the required adverse action notice." [Doc. # 31, Pl.'s Reply, at 13.] The class does not contain any individuals who benefitted by the use of credit reports. Thus, FIE's first argument on the adequacy of representation issue is without merit.

The other argument advanced by FIE on the issue of Braxton's adequacy as a class representative is the one raised by FIE *vis à vis* the adequacy of counsel: that it might be in the best interest of some class members to pursue actual damages, rather than the statutory damages sought by Braxton on behalf of the class. As Braxton points out, this alleged conflict can be eliminated by an appropriate notice to the class members, advising them of the type of damages sought by the class representative. Because certification is sought under Rule 23(b)(3), class members will have the opportunity to opt out of the class and pursue their claims individually, should they choose to do so. Thus, there is no real conflict of interest here, and the court finds that Braxton is an adequate class representative.

2.   **Rule 23(b).**

Having determined that Braxton has satisfied each of the requirements of Rule 23(a), the court must consider the requirements of Rule 23(b). Plaintiffs have sought certification of a class under Rule 23(b)(3). In order for certification of a Rule 23(b)(3) class to be proper, the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

a.   **Predominance.**

The predominance inquiry "is far more demanding than Rule 23(a)'s commonality requirement." *Rutstein*, 211 F.3d at 1233 (internal quotation marks omitted). In determining whether common questions predominate, the court must "examine the cause[ ] of action asserted in the complaint on behalf of the putative class." *Id.* at 1234 (internal quotation marks omitted) (alteration in original). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue[s] will have in each class member's underlying cause of action." *Id.*

FIE argues that individual issues predominate over common ones because: (1) individual policy holders may have received oral notice that complied with the FCRA from their insurance agents, (2) whether individual class members may have received the renewal notice prior to receipt of the November 1, 2001, letter is an individual issue, (3) whether individual policy holders received and read the FCRA notice is an individual issue, (4) whether the class members understood the notice is an individual issue, and (5)

13

determining actual damages sustained by class members is an individual issue. The court has already found that the common questions include the facts surrounding the mailing of the November 1, 2001, letter to Mr. Braxton and of similar letters to class members, the legal issue of whether an FCRA notice was required at that time, and the state of mind (willful, negligent, or neither) of FIE in failing to include an FCRA notice in those letters. Resolution of these common issues will essentially resolve the issue of liability in this case, leaving only the issue of damages. Because the questions of whether class members received, read, and understood the notice that was sent to them are irrelevant to the plaintiff's claim (based on the contention that a notice should have been sent with the November 1, 2001, letter), FIE's third and fourth argument listed above are without merit.

FIE's remaining arguments are: that FIE may have a defense to the claims of some class members who may have received oral notice from their insurance agents, that some class members may have actually received the renewal bill prior to receipt of the November 1, 2001, letter, and that any claim for actual damages would require a highly individualized inquiry. FIE's argument relating to the defense of oral notice, however, is based on mere speculation that some class members spoke with their insurance agents. Furthermore, FIE does not claim that any of these discussions between policy holders and insurance agents took place at the relevant time period – before the November 1, 2001, letter was sent – but rather indicates that many agents have "verbal discussions" with their policy holders after the policy holders have received the renewal packet. [Doc. #21, Def.'s Opp'n, at 12.] The affidavits submitted by two agents confirm that while agents provide FCRA notices to applicants for new insurance policies who apply in person, FIE sends the

14

FCRA notices with renewal notices for current policy holders. Further, while the agents state in their affidavits that they have spoken with customers regarding renewal premiums, the agents acknowledge that these conversations have occurred "upon receipt of renewal packages." [Doc. # 22, Def.'s Evidentiary Materials, Exs. N, O.] Any conversations between policy holders and insurance agents that occurred after the FCRA notices were sent would be irrelevant to the issue of whether, in failing to send the FCRA notices in its first mailing regarding premium increases, FIE complied with the FCRA. Thus, it appears to the court that the existence of this so-called defense does not lead to a conclusion that individual issues predominate over common ones.

FIE's argument about the timing of the letter and the renewal notice is likewise unavailing. In his deposition, a representative of FIE stated that the letters were sent to class members "about sixty days" in advance of their renewal notices to give "them time to shop." [Doc. # 22, Def.'s Evidentiary Materials, Ex. C, Dep. of Jeff Withoft, at 66, 58.][1] If the letters were sent before the renewal notices in order to give class members "time to shop" for insurance coverage at a lower cost, the court is at a loss to understand how or why some class members may have actually received their renewal notices *before* the letters. The court will not find that individual issues predominate over common ones based on the far-fetched hypothetical in which a letter, notifying a policy holder that his renewal notice will be mailed soon, actually arrived in the mailbox of the policy holder after the notice.

---

[1] The court notes that in the case of the class representative, Braxton, the letter was sent only seventeen days in advance of the renewal notice.

15

As for the damages issue, in his most recent submissions to the court, Braxton, on behalf of the class, seeks the statutory damages of between $100 and $1,000 for willful non-compliance with the FCRA, punitive damages, and attorney's fees and costs. [Doc. # 31, Pl.'s Reply, at 7 ("[T]he class is seeking between $100.00 and $1,000.00 per class member.").] By choosing to pursue the statutory damages, Braxton has eliminated the need for proof of actual damages for willful non-compliance, as the statutory damages are an exclusive alternative to recovery of actual damages. *See* 15 U.S.C. § 1681n. However, should Braxton be unable to prove willfulness but succeed in proving that FIE was negligent in failing to comply with the FCRA, the class members would be entitled only to actual damages, attorney's fees, and costs, in which case individual issues as to actual damages would arise. Indeed, because mental distress damages may form the basis of an actual damages award under the FCRA, *see Riley*, 194 F. Supp. 2d at 1244, resolving the issue of actual damages could be fairly individualized. However, "[v]ariations in the amount of damages suffered by individual class members will not preclude a finding of predominance or defeat certification of the class." *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 701 (M.D. Ga. 2002). Furthermore, pursuant to Rule 23(c)(1), the court may issue a conditional order certifying the class, which "may be altered or amended before the decision on the merits." Fed. R. Civ. P. 23(c)(1).

At this stage in the proceedings, common questions of law and fact predominate, and it is appropriate to conditionally certify a class to determine those common questions of law and fact. Indeed, both parties appear to agree on most of the salient facts, and the resolution of the case could very well turn on the legal question of whether notice was

required under the FCRA at the time of the initial mailing notifying policy holders of premium increases. Should the litigation proceed to a stage where it becomes clear that individual issues predominate over common issues of law and fact, the court may, at that time, reconsider the class certification question.

**b.     Superiority.**

The second requirement of Rule 23(b)(3) is that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Supreme Court has stated that this requirement was added to Rule 23 "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ P. 23 advisory committee notes). Given that this case could turn on the legal question of whether notice was required in the November 1, 2001, letter, the court is confident that a class action is superior to individual litigations. "[I]f these claims were litigated separately, repeatedly litigating the same issue[ ] would have 'lamentable consequences for judicial economy and the finality and consistency of judgments.'" *Upshaw*, 206 F.R.D. at 701 (quoting *Cox*, 784 F.2d at 1554). Additionally, "despite the incentive of punitive damages and attorneys' fees available under the FCRA, the cost of investigating and trying these cases individually likely exceeds the value of any statutory and/or punitive damage award that may be due to any particular class claimant." *White v. Imperial Adjustment Corp.*, No. Civ.A. 99-3804, 2002 WL 1809084, at *15 (E.D. La. Aug. 6, 2002).

17

FIE argues that *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y. 1972) (*Ratner II*), and its progeny should inform the court's superiority analysis. The court in *Ratner II* denied class certification in a case alleging minor violations of the Truth in Lending Act ("TILA"), which, at the time, provided for statutory damages of $100 for failure to comply with TILA.[2] FIE argues that because Braxton alleges what is "at the most" a minor technical violation of the FCRA, the class action is not superior to individual litigations. FIE contends that to aggregate the damages of the class members in such a case "would be a horrendous, possibly annihilating punishment." *Ratner II*, 54 F.R.D. at 416.

The court finds this argument unpersuasive at this stage in the proceedings and under the particular facts of this case. For the class to be entitled to statutory and punitive damages in this case, it will have to prove that any failure to comply with the FCRA, even one resulting in a mere technical violation of the Act, was *willful*. In *Ratner*, however, TILA imposed something more akin to strict liability for violations, allowing a defendant to raise as an affirmative defense its claim that the violation was unintentional. *See Ratner v. Chem. Bank N.Y. Trust Co.*, 329 F. Supp. 270, 279-80 (S.D.N.Y. 1971) (*Ratner I*). Thus, the FCRA is unlike TILA in that the plaintiff in an FCRA case must allege that the failure to comply was *willful* to be awarded the statutory and punitive damages that FIE asserts would amount to a "horrendous, possibly annihilating punishment." A "horrendous . . . punishment" might result if an award of statutory and punitive damages could be premised on a failure to comply with the FCRA that was less than willful; however, this outcome is avoided because

---

[2] In 1974, Congress amended TILA so as to provide a maximum total penalty to apply in all TILA class action cases. *See Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 116 n.2 (5th Cir. 1975).

18

the FCRA does not impose strict liability on users who fail to comply with the act. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 417 (4th Cir. 2001).[3]

In this case, the questions of whether there was a violation of the FCRA, and if so, whether that violation was willful, are both questions on the merits which are not before the court at this time. In the face of the arguments supporting a finding of superiority, FIE's argument based on *Ratner II*, which requires the court to examine, to some extent, the merits of the claims in the case, is unavailing.[4] "Because considering the financial impact of a judgment presupposes success on the merits and requires the trial court to express an opinion on the harshness *vel non* of a particular remedy prior to trial itself, it ought to be allowed only in extreme cases." *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1114 (5th Cir. 1978). This is not an extreme case of the type contemplated by the former Fifth Circuit in *Roper*. Therefore, the court finds that, at this juncture, a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).[5]

---

[3] Thus, the Eleventh Circuit's holding in *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir. 1984), is inapposite. The court in *Shroder* held that "in particular cases, . . . violations may be too technical to form the basis for maintaining a class action under TILA." *Id.* at 1378. However, the reluctance of courts to certify classes alleging mere technical violations of TILA is based on the near strict liability imposed by TILA. Such a concern is not present in this case, or any case brought under the FCRA, because the class must prove that any failure to comply was willful to be awarded statutory and punitive damages.

[4] Furthermore, *Ratner II* is factually distinguishable from this case, as the proposed class in that case included upwards of 130,000 individuals, while the proposed class in this case includes somewhere between 5,000 and 8,750 individuals. *See Ratner II*, 54 F.R.D. at 416.

[5] FIE argues that the pendency of two individual actions in this court raising claims that are essentially identical to those raised by Braxton on behalf of the class mitigate against a decision certifying the class. Although "the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class" is one factor in determining whether the class action is a superior method of adjudicating the controversy, the court does not believe that the existence of two individual litigations, both of which were filed in March of this year, should affect its decision that the class device provides a superior method of adjudication of this case.

19

**IV. Conclusion.**

Because it finds that all of the pre-requisites to class certification have been met, the court hereby GRANTS the plaintiff's motion for class certification. Pursuant to Rule 23(c)(1), the court's certification decision is conditional, and should circumstances warrant, the court may, at a later time, and upon appropriate motion, reconsider its decision. In the interest of clarifying the precise contours of the class, the court slightly modifies the class definition and certifies the following class:

> All persons who were residents of Alabama during the time period from October 16, 2001, to the present who were subjected to adverse actions in conjunction with the renewal of their policies of homeowners' insurance issued by Fire Insurance Exchange based in whole or in part on information contained in their consumer credit reports and who received letters stating that their premiums would be increased by 50% or more that did not include contemporaneous notices in compliance with 15 U.S.C. § 1681m(a).

A separate order will be entered.

Done, this _13th_ of September, 2002.

                                    Edwin Nelson
                                    United States District Judge